HERMAN J. KUMBERGER et al., Respondents, *v.* THE CONGRESS
SPRING COMPANY, Appellant.

1. APPEAL — PRESENTATION OF QUESTION WHETHER CASE SHOULD
NOT HAVE BEEN SUBMITTED TO JURY. When the defendant has requested
to go to the jury upon the facts and the request has been denied, although
the record discloses no exception to the denial, an exception noted to the
subsequent direction of a verdict for the plaintiff suffices to raise on appeal
the question of law whether the material facts in the case should not
have been submitted to the jury.

2. VENDOR AND VENDEE — ACTION FOR PRICE OF STATIONARY ENGINE —
QUESTION AS TO PLACE OF ERECTION BROUGHT INTO CASE BY PLAINTIFF.
Where, in an action by the vendor against the vendee, for the price of a
stationary engine set up in place, claimed by the vendee to have proved
unsatisfactory because erected upon an improper foundation, the plaintiff
gives evidence to prove that the defendant was to provide a suitable place
for the engine, such evidence introduces into the case the question whether
it was the understanding of the parties that the place was to be provided
for by the defendant, or whether that was left to the plaintiff to see to;
and if the plaintiff's evidence on the question is contradicted, a question
of fact is raised.

3. QUESTION AS TO FOUNDATION FOR ENGINE. When the plaintiff in
such an action has admitted into his case, and rendered material, the ques-
tion whether the defendant was to provide the foundation for the engine
to be erected upon, it is not incompetent for the defendant to show, in
defense, that it was not proper for the plaintiff to erect the engine with-
out knowing something about the floor upon which it was to stand.

4. CASE FOR SUBMISSION TO JURY. When the real question, in an
action for the price of a stationary engine set up in place, is whether the
vendor did or did not undertake anything as to a foundation for the engine
and whether, if he did so undertake, he properly performed his under-
taking, and there is conflicting evidence on the question, the case should
go to the jury.

5. DAMAGES CHARGEABLE TO VENDOR. If the vendor of an engine,
under a contract requiring him to furnish it set up in place, suffers the
engine to be erected upon an inadequate and improper foundation, when
a word of advice to the vendee might have caused the latter to provide a
proper place, then the vendor should fairly be held responsible for any
consequent damage which was a direct result.

*Kumberger* v. *Congress Spring Co.*, 8 App. Div. 96, reversed.

(Argued February 1, 1899; decided February 28, 1899.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered July 28, 1896, affirming a judgment in favor of plaintiffs entered upon a verdict directed by the court.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Edgar T. Brackett* and *J. W. Crane* for appellant. To sustain the judgment, it must be held that the plaintiffs were entitled to recover on the defendant's story, the plaintiffs standing in the position of demurring to the defendant's proof as a whole. (*Royce* v. *Watrous,* 7 Daly, 87 ; 73 N. Y. 597; *Bagley* v. *Bowe,* 105 N. Y. 171.) The plaintiffs were bound, under the contract, either to furnish and erect a proper foundation for the engine, or, at least, to indicate to the defendant that a foundation was needed in order that it might erect the same at its own expense. (*Reading* v. *Gray,* 5 J. & S. 79 ; *Nicoll* v. *Sands,* 131 N. Y. 19.) All of the verbal negotiations, which were preliminary to the written contract, were merged in the written contract when made, and were, therefore, inadmissible on the trial. (Greenl. on Ev. [15th ed.] 275 ; *Renard* v. *Sampson,* 12 N. Y. 561; *Long* v. *N. Y. C. R. R. Co.,* 50 N. Y. 76 ; *Hinckley* v. *N. Y. C. & H. R. R. R. Co.,* 56 N. Y. 429 ; *Herman* v. *Roberts,* 119 N. Y. 37; *Sanders* v. *Cooper,* 115 N. Y. 279; *Long* v. *M. I. Co.,* 101 N. Y. 638; *Corse* v. *Peck,* 102 N. Y. 513 ; *Whitford* v. *Laidler,* 94 N. Y. 145 ; *Case* v. *Phœnix Bridge Co.,* 134 N. Y. 78 ; *House* v. *Walch,* 144 N. Y. 418.) It was error for the court to sustain the objection of the respondents to the questions put to the witness Baker, as to whether this engine was properly placed, ready for the belt. (*Bissel* v. *Campbell,* 54 N. Y. 353 ; *Smith* v. *Clews,* 114 N. Y. 190 ; *House* v. *Walch,* 144 N. Y. 418.) In any possible aspect of the case, if the defendant was not entitled to a dismissal of the complaint, it was entitled to have the questions submitted to the jury. (*White* v. *Hoyt,* 73 N. Y. 505 ; *Kenyon* v. *K. T. & M. M. A. Assn.,* 122 N. Y. 247.)

*Charles S. Lester* and *M. P. O'Connor* for respondents. Extraneous evidence is admissible to aid in the construction of a written contract. (*Thorington* v. *Smith,* 8 Wall. 1; Greenl. on Ev. §§ 277, 282; *Bank of Montreal* v. *Recknagel,* 109 N. Y. 490; *Knapp* v. *Warner,* 57 N. Y. 668; *White's Bank* v. *Myles,* 73 N. Y. 339.) The contract between the parties being in writing, the construction of it was a question of law for the court. (*Brady* v. *Cassidy,* 104 N. Y. 155; *Dwight* v. *G. L. Ins. Co.,* 103 N. Y. 342; *Groat* v. *Gile,* 51 N. Y. 431; *S. L. Home* v. *Assn.,* 52 N. Y. 191.)

GRAY, J. This action was brought by the plaintiffs to recover of the defendant the agreed price of a gas engine, which was furnished and erected by the former under a certain agreement contained in the correspondence of the parties. The plaintiffs made and signed a proposal in writing to the defendant " to furnish and erect in their building  *  *  * one White and Middleton gas engine of six actual horse power, put up complete, including all necessary connections, etc.  *  *  * leaving engine in satisfactory working order and ready for driving belt, for the sum of $700, payable thirty days after satisfactory completion of contract.  *  *  * We also guarantee the power of this engine to be six actual horse power delivered to belt." This proposal was accepted by the defendant, in the words, that, " We accept the above proposition to furnish and erect engine as fully described, etc." The plaintiffs furnished the engine from their place of business, in New York city, and erected it upon the defendant's premises at Saratoga Springs, in the State of New York. After it had been in operation for about two days, it worked unsatisfactorily; by reason of not having been placed upon a more stable foundation. Its weight was about 2,200 pounds and it was placed upon a floor of the defendant's building, which was one inch and a quarter of an inch in thickness, and nailed to stringers underneath of two by four inches, laid flatwise on the sand, two feet apart. The plaintiffs had never seen the building before erecting the engine; but had been

furnished with a rough sketch of the room where the engine was to be used. The action was defended upon the ground that the plaintiffs had failed to perform their contract, by erecting the engine upon an improper foundation, and a counterclaim was set up for damages sustained by the defendant.

At the trial the plaintiffs, after proving the contract, gave evidence to show how it came to be made, what occurred when the engine was set up, with reference to its location, and concerning the subsequent dispute when payment was refused. The defendant, also, gave its version of what occurred at the time when the engine was erected in its building, what subsequently happened when it was operated, and how, in the course of the second day, as the result of the vibrations while in operation, the engine had settled upon one side and was abandoned by it. The defendant was not allowed to give evidence as to the loss or expenses to which it had been put. At the close of the plaintiffs' case, the court denied the motion of the defendant for a dismissal of the complaint and held, "as matter of law, that the plaintiffs were to furnish the engine complete; that it was the defendant's duty to furnish a place to put it and it alone is responsible for the place where it was put." The defendant's counsel, thereupon, requested the court to direct a verdict for the defendant, which motion was denied and the defendant excepted. The defendant's counsel then asked "to go the jury on the facts in the case," which request was, also, denied. The plaintiffs, then, asked for a direction of a verdict in their favor and the jury was directed by the court to render a verdict for the plaintiffs; to which direction the defendant excepted. The judgment, which was recovered by the plaintiffs, was affirmed at the Appellate Division and the defendant appeals to this court from the judgment of affirmance and, among other errors alleged to have been committed upon the trial, insists that it was entitled to have the questions of fact in the case submitted to the jury. I think that we should so hold.

Although, according to the record before us, no exception

appears to have been taken immediately upon the denial by
the court of the defendant's request to go to the jury, there is
an exception noted to the subsequent direction of a verdict
for the plaintiffs and that, plainly, sufficed to raise the ques-
tion which is presented, viz. : whether the material facts in
dispute should not have been submitted to the jury for their
determination.   Had the defendant not made the request to
go to the jury upon the facts, it might have been deemed to
have acquiesced, for all that appears, in the decision by the
court of the issues.   In excepting, however, to the direction
of a verdict for the plaintiffs, after the denial of its request,
the idea of any such acquiescence was distinctly negatived
and a question of law is presented as to the correctness of the
action taken by the court.

That there was a question of fact, which the jury alone
should have determined, seems quite clear.   Clements, one of
the plaintiffs, being called as a witness, proved the proposal
and acceptance, embodying the contract for the furnishing and
erection of the engine.   His counsel then asked him the ques-
tion, " Did you at this time when this proposal was made, did
you inquire of Mr. Thurber where the gas engine was to be
placed ? "   This question was objected to by the defendant, as
being " incompetent and immaterial," and because " the nego-
tiations were in writing."   The objection was overruled and
the defendant excepted.   The witness then proceeded to tes-
tify to having a " general conversation about the particulars
of the building" with Thurber, who was an officer of the
defendant.   He testified that Thurber said that it was a one-
story building and that the engine was to be placed on the
ground floor.   The witness told him that he must provide a
suitable place for the engine and Thurber replied that " that
was satisfactory."   When, later in the course of the plaintiffs'
case, Thurber was examined by them as a witness, as to certain
matters occurring at the time of the visit of one of the plain-
tiffs at the defendant's office, upon his cross-examination, he
denied expressly that, in the conversation had between him
and Clements, there was anything said to the effect that the

defendant was to furnish anything in connection with the engine, or with respect to the place where the engine was to set, further than that it was to be put into the room for the defendant. I do not think that the question which was addressed to the witness Clements was objectionable upon the ground that the negotiations of the parties were in writing; for the effect of the evidence called for would not be to vary, or to contradict, any of the terms of the contract, nor be, necessarily, inconsistent with its obligations. But the plaintiffs' evidence opened the door to an inquiry into circumstances, which affected the performance of the contract, and bore upon an understanding of the parties with respect to the necessity of a proper place being provided upon the defendant's premises by one, or the other, of the parties, for the effective working of the engine. If we should assume that the contract simply required the plaintiffs to furnish a complete engine and that no duty was imposed upon them with respect to a foundation, which was the view taken by the trial judge, then upon that theory the plaintiffs should have contented themselves with proving the performance of their agreement to the extent required by such a construction. They did not, however, apparently take that view of the matter; or they would not have proceeded to give evidence in order to prove that the defendant was to provide a suitable place for the engine. That evidence introduced into the case an element of considerable importance; namely, whether it was the understanding of the parties that the place for the erection of the engine was to be provided for by the defendant, or whether that was left to the plaintiffs to see to. Thurber having, explicitly, while on the stand as a witness for the plaintiffs, denied that there was anything said in his conversation with Clements to the effect testified to by the latter, a question was raised as to that fact upon the plaintiffs' own case. Again, when the plaintiffs had admitted a question into their case, which we must assume that they thought, and which indeed might be considered, to be a material one, surely, it was not incompetent for the defendant to show, in its defense, that it was not

proper to erect such an engine without knowing something about the floor upon which it was to stand.

The defendant examined as a witness a machinist and engineer, who did some work in adjusting the pulleys and engine belt, at the time when the engine was erected, and who testified that the only defect in the plaintiffs' work was with respect to the foundation. It asked him this question: "Was it a proper thing for a man to put that engine on the floor without knowing what that floor was?" This was objected to by the plaintiffs, as being incompetent, and the objection was sustained; the defendant excepting to the ruling. In view of the fact that there was a dispute in the case, as to whether the defendant was to provide the foundation for the engine to be erected upon, I think that, in contemplation of the submission of that dispute to the jury, it was fairly entitled to have the evidence of one who was skilled in such matters, as to whether, if the jury should believe that it was incumbent upon the plaintiffs to provide the foundation, they had properly performed so much of their obligation. All the question there was in the case, in reality, was as to whether the plaintiffs did, or did not, undertake anything as to a foundation for the engine and whether, if they did so undertake, they properly performed their undertaking in that respect. Evidence, on either side, was addressed to the solution of that question and, in view of its conflicting nature, the case should have gone to the jury for its determination.

The contract did not require that the plaintiffs should furnish the foundation, or the proper place, for the engine; but they should have seen in erecting it whether a proper foundation existed. That was, of course, necessary to its continuous and satisfactory working and was a matter, presumably, practically within the plaintiffs' knowledge and experience. If, when delivering the engine, they found no proper place to erect it upon, they should have so informed the defendant's officers and if, then, the latter did not cause such to be provided, and at their own cost, the plaintiffs might have declined to proceed with a work which would so soon, possibly, be

44

rendered useless. There was that measure of duty owing from the plaintiffs to the defendant and if they neglected it, while performing that part of the contract relating to the setting up of the engine in a condition for its satisfactory working, then it might well be that a question would be raised as to whether the defendant was not entitled to recover any damages resulting from the engine thereafter settling so as to be disabled from doing the work designed. That is to say, if the plaintiffs suffered the engine to be erected upon an inadequate and improper foundation, when a word of advice to the defendant's officers might have caused them to provide a proper place, then the plaintiffs should fairly be held responsible for any consequent damage which was a direct result.

I think that, for the error committed by the trial court in directing the jury to render a verdict for the plaintiffs, there should be a new trial of the action.

The judgment appealed from should be reversed and a new trial ordered, with costs to abide the event.

All concur, except Martin, J., not voting.

Judgment reversed, etc.